IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO: 7:05-CR-97-19-FL
NO: 7:08-CV-13-FL

| | | |
|---|---|---|
| DEMETRIO QUINTANA | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

This matter comes before the Court on Petitioner Demetrio Quintana's Motion to Vacate, Set Aside, or Correct his Sentence, filed pursuant to 28 U.S.C. § 2255. **[DE-40]**.[1] The Government has responded and requested an evidentiary hearing. **[DE-296]**. An evidentiary hearing was held on June 5, 2008. Accordingly, this matter is now ripe for adjudication.

## **Background**

On September 22, 2004, Petitioner was indicted for conspiracy to distribute more than five kilograms of cocaine hydrochloride, a Schedule II controlled substance in violation of 21 U.S.C. § 841 (a)(1). **[DE-3]**. Petitioner entered a guilty plea to a criminal information on September 19,

---

[1] Docket entry numbers correspond to case number: 7:05-CR-97-19-FL.

1

2006. **[DE-449]**. He was sentenced to one hundred fifty-one (151) months imprisonment on February 22, 2007. **[DE-595]**. No notice of appeal was filed; however, on January 24, 2008, he timely filed a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255. **[DE-673]**. In his motion, Petitioner asserts that his attorney, William T. Peregoy, was ineffective because he failed to file a notice of appeal as requested by Petitioner. Id. at 5. The Government responded denying that Petitioner so instructed his attorney and requested an evidentiary hearing to resolve this issue. **[DE-696]**. The matter was referred to the undersigned to conduct an evidentiary hearing on Petitioner's claim. **[DE-697]**.

An evidentiary hearing was held on June 5, 2008, in Raleigh, North Carolina, with James Royal Saunders representing the Petitioner and Steven Matheny representing the Government.

## Analysis

The Fourth Circuit has held that an attorney's failure to file notice of appeal, when explicitly instructed to do so by his client, constitutes ineffective assistance of counsel regardless of the likelihood of success on appeal. United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). Other ineffective assistance of counsel claims are evaluated under the two-prong analysis articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-94 (1984). Under the first prong, the so-called performance prong of the Strickland test, a defendant must demonstrate that his counsel's performance was deficient by identifying counsel's acts or omissions that "were outside the wide range of professionally competent assistance." Id. at 687, 690. Under this prong, an attorney has a "constitutionally-imposed" duty to consult with a defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably

2

demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). When making this determination, the court must take into account a variety of factors including "all the information counsel knew or should have known." Id. In addition, another "highly relevant factor" is whether the defendant's conviction was the result of a trial or a guilty plea. Id. A guilty plea is significant because it "reduces the scope of potentially appealable issues and . . . may indicate that the defendant seeks an end to judicial proceedings." Id.; see also, United States v. Poindexter, 492 F.3d 263, 268 (4th Cir. 2007). In sum, the court's determination of the reasonableness of an attorney's conduct is guided by a totality of the circumstances approach. Flores-Ortega, 528 U.S. at 480.

Based on the foregoing, the court's first inquiry is whether the Petitioner instructed Mr. Peregoy to file a notice of appeal to determine whether the Peak analysis is applicable to this case.

During the evidentiary hearing, the Petitioner testified that he explicitly instructed Mr. Peregoy to file a notice of an appeal.

> Q: Did you speak with Mr. Peregoy about filing an appeal?
> A: Yes.
> Q: When did you speak to Mr. Peregoy about filing the appeal?
> A: At the same moment when I was being sentenced in front of the Judge.
> Q: What did you tell him?
> A: I told him if he would be doing that, and he said yes.[2]

Ev. at 7.[3]

In contrast, Mr. Peregoy testified that Petitioner never instructed him to file notice of an

---

[2] Petitioner repeats this assertion in earlier testimony: "My petition is based upon the fact that he didn't request the petition that I requested within the ten day period. And he said in front of the judge that he was going to do it." Ev. at 6.

[3] Refers to the transcript from the evidentiary hearing that took place on Friday, June 5, 2008.

appeal.

> Q: Okay. Moving on to the time - - well, first off, during the trial, did Mr. Quintana say anything to you about an appeal – I am sorry. During the sentencing. During the sentencing, did he – during the time you were in court with Judge Flanagan, did he make any statements or comments to you about an appeal?
> A: He did not make any statements to me about an appeal. But when Judge Flanagan went through is appellate rights - - and she went through them quite exhaustively - - he acknowledged to her, yes, I understand, and then intimated to me that he wanted to speak to me about that, or he want to speak to me. I don't know if it was about that issue.

Ev. at 18.

Mr. Peregoy also testified that he advised the Petitioner that "there was no error" during the sentencing hearing that would have afforded him relief, and that the sentencing court had not "made any mistakes." Id. at 19-20. However, despite the lack of viable claims for an appeal, Mr. Peregoy indicated that had the Petitioner instructed him to file a notice of appeal, he would have followed his normal practice and filed a so-called Anders[4] brief on the Petitioner's behalf. Id. at 22.

A Petitioner must establish a denial of a constitutional right by a preponderance of the evidence. Johnson v. Zerbst, 304 U.S. 458, 468 (1938). After evaluating the conflicting testimony during the evidentiary hearing, the undersigned credits Mr. Peregoy's testimony and concludes that the Petitioner did not explicitly instruct him to file a notice of appeal.

For example, the Petitioner is clearly mistaken with regards to when he instructed Mr. Peregoy to file a notice of appeal. As noted above, the Petitioner testified that Mr. Peregoy indicated that he was going to note an appeal while they were in front of the sentencing court. However, when the sentencing court asked the Petitioner whether he had any questions about his appeal rights, he

---

[4] Anders v. California, 386 U.S. 738 (1967).

4

only said: "[w]hat does the attorney have to say?" [Sentencing hearing transcript at 33].[5] There is nothing in the record that indicates that the Petitioner had a discussion with Mr. Peregoy at this time. Instead, Mr. Peregoy stated on the record: "I'll be happy to discuss it with him and explain that he has ten days to make that decision, your honor," which indicates that he planned to speak with the Petitioner after the sentencing hearing about his appeal rights. St. at 33. Based on the forgoing, the court concludes that the Petitioner has failed to meet his burden of proof that he instructed his attorney to file a notice of appeal.

Although the court concludes that the Petitioner did not explicitly instruct Mr. Peregoy to file a notice of appeal, the inquiry into whether his counsel's performance was deficient does not end there. Flores-Ortega, 528 U.S. at 478. The court must determine whether counsel "consulted" with the Petitioner. Id. The Supreme Court has given the term "consult" a very specific meaning in this context; it involves "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."[6] Id.

The determination of whether counsel "consulted" with his client is guided by the two-part Strickland test, which requires the court to focus on the reasonableness of an attorney's conduct based on the specific circumstances of the case. Id. For example, if an attorney consults with his client, then "counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. However, if the attorney does not consult with his client, then "the court must in turn ask a second, subsidiary question: whether

---

[5] Sentencing hearing transcript will be designated: "St."

[6] This definition is consistent with the ordinary meaning of the word: "consult: to ask the advice or opinion of." Webster's Third New International Dictionary Unabridged, 480 (3d ed. 1986).

5

counsel's failure to consult with the defendant itself constitutes deficient performance." Id.

The evidence, including Mr. Peregoy's testimony at the evidentiary hearing, demonstrates that Mr. Peregoy did not "consult" with the Petitioner. Mr. Peregoy testified about the conversation that he had with the Petitioner after the sentencing hearing:

> Q: Did you, at the end of the sentencing hearing, go talk with Mr. Quintana?
>
> A: I did.
>
> Q: Was that in lock-up at the courthouse?
>
> A: It was in the courthouse when they were escorting him. It's in the new courthouse in Greenville where they take an inmate back to the back lefthand corner and they lead them down a corridor, and I went back there and I did see him briefly
>
> Q: What if anything, did you talk about? Do you recall the substance of that conversation?
>
> A: Again, I have a litany of things that I like to cover to make sure I have touched all my bases, and I told him I was sorry that Judge Flanagan – because there was an extensive argument at the sentencing hearing, there were a number of objections to the PSR, and including some issue dealing with the actual identification of who was involved here, specifically dealing with his problems with the firearm. I told him I was sorry how that had happened, told him I would get up with his family and talk to them. They were at most of the proceedings. He has a fairly extended family. And I told him now this is why I wouldn't have pled guilty because basically you have waived a lot of your rights to appeal, and I didn't think Judge Flanagan made any mistakes. I still don't. I don't believe that I made any mistakes, your honor. But if he would have instructed me to file a notice of appeal, I would have surely done so.

Et. at 19-20.

Contrary to Mr. Peregoy's testimony, the Petitioner disputes that such a conversation took place. Id. at 7. "Q. Did you speak to [Mr. Peregoy] after you left the courtroom? A. No. He told me that he was going to go see me at the jail in the county in the afternoon, but he never came." Id. The undersigned finds that Mr. Peregoy's testimony is more credible than that of Petitioner and that

6

he met with his client.

The Supreme Court has rejected a bright-line rule requiring counsel to always consult with his client regarding an appeal. Id. at 478. Instead, the court is guided by the two-part Flores-Ortega standard, in determining whether Mr. Peregoy had a duty to consult in this case. Id. at 480. This standard focuses on: 1) whether a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) whether this particular defendant reasonably demonstrated to counsel that he was interested in appeal. Id.

During his arraignment Petitioner utilized the assistance of an interpreter. There he testified that he understood the charges against him [Arraignment transcript at. 36-37, ll. 15-25, 1-10], the maximum penalties associated with the charges [Tr. at 37-38, ll. 20-25,1], and he pleaded guilty without a plea agreement. Id. at 40-41, ll. 4-25, 1-18. In addition, during his sentencing hearing, the Petitioner requested and received a sentence at the bottom of the guideline range.[7] [Sentencing transcript at. 27-29]. This evidence reveals that the Petitioner had a clear understanding of the charges against him, the penalties he faced, and sought an "end to the judicial proceedings" by pleading guilty to his crimes. See Flores-Ortega, 528 U.S. at 480. Moreover, there were no viable grounds for appeal, the court or the Government having resolved most issues in Petitioner's favor. (See the discussion of prejudice, infra) Thus, considering all of the relevant factors, a rational defendant in the Petitioner's position would not have wanted an appeal.

Notwithstanding the above, at the end of his sentencing hearing Petitioner demonstrated his interest in an appeal. The following exchange took place:

---

[7] Initially, the guideline range for the Petitioner's offense was 188 to 235 months. [Tr. at 6]. However, after the Government agreed not to pursue the two-level firearm enhancement, Judge Flanagan took two points off the Petitioner's offense level, which reduced the range to 151 to 188 months. Id. at 7-8.

7

| | |
|---|---|
| The Court: | You can appeal your conviction if you believe your guilty plea was unlawful or involuntary, or if there's something fundamentally wrong with this proceeding. You've got a statutory right to appeal your sentence, particularly if you think it goes against law. Now, with very few exceptions, any notice of appeal has to be filed within ten days of judgment doing on the docket. If you cannot afford the cost of an appeal, you can apply for permission to appeal for free. And, if you request, the clerk will prepare and file a notice of appeal for you. Do you have any questions about your appeal rights? |
| The Defendant: | **What does the attorney have to say?** (emphasis added) |
| Mr. Peregoy: | I'll be happy to discuss it with him and explain that he has ten days to make that decision, your Honor. |
| The Court: | Okay. |
| Mr. Peregoy: | I would suspect that his primary concern was the third point for acceptance. I understand the legal reasoning. For the record, on behalf of the defendant, I renew that the Court find that the three points was acceptable. And I know you don't have the legal support to do it, but – |
| The Court: | All right. Well, that's on the record. |

Tr. at 34 (emphasis added).

This exchange reveals that Mr. Peregoy was at least aware that the Petitioner wanted to speak with him about an appeal. See Frazer v. South Carolina, 430 F.3d 696, 708 (4th Cir. 2005) (stating that "when . . . the defendant has manifested an interest in appealing, Strickland requires that counsel consult with the defendant in deciding to go forward. Significantly, this duty applies even if the defendant has plead guilty.") (internal citations omitted).

The court has already concluded that Mr. Peregoy had a conversation with the Petitioner after the sentencing hearing. However, after considering the totality of the circumstances, it is clear that Mr. Peregoy's performance was deficient for two reasons. First, he testified that after the sentencing hearing, he "briefly" spoke with the Petitioner while they were escorting him to the

8

holding area in the back of the courtroom. Id. at 23. When questioned by the Court about the length of time he was able to speak with the Petitioner, Mr. Peregoy could not recall the exact amount of time, but estimated that "it was perhaps five or ten minutes, if that. It was fairly quick." Id. at 19, 26. The brevity of Mr. Peregoy's conversation with the Petitioner did not permit him to adequately explain the advantages and disadvantages of taking an appeal, and discover the Petitioner's wishes. Flores-Ortega, 528 U.S. at 478. However, brevity alone is not the sole determinant of counsel's failure to consult. More importantly, Mr. Peregoy's failure to utilize the services of the interpreter interfered with his ability to consult with the Petitioner any meaningful way.

At the arraignment and sentencing hearings, Mr. Peregoy acknowledged that he had some difficulty communicating with the Petitioner, which required the use of an interpreter. [Arraignment transcript at. 15, ll. 13-16, p. 24-25]; [Sentencing transcript at 3, ll. 1-7].

> The Court: Do you understand that the purpose of this proceeding today is to take your plea in response to the charges against you?
> The Defendant: Yes.
> The Court: Is it Mr. Peregoy?
> Mr. Peregoy: That's correct, your Honor.
> The Court: Very good, sir. Thank you. Have you had any difficulty communicating with Mr. Quintana?
> Mr. Peregoy: Other than, obviously, for the interpreter, no, sir.

[Arraignment Transcript. at 15][8].

Later, during the same hearing, when Mr. Peregoy needed to confer with the Petitioner, he did so with the assistance of the interpreter.

> The Court: Thank you, ma'am. Mr. Quintana, do you dispute any of the facts stated by counsel for the government?
> Mr. Peregoy: Your Honor, one moment. (Defendant and counsel conferring off the record through the interpreter.)

---

[8] Arraignment transcript (hereinafter "At.)

[At. at 24-25].

Similarly, at the beginning of the sentencing hearing, Mr. Peregoy stated that he used an interpreter to discuss the Petitioner's PSR with him.

> The Court: Good Morning. Have you had enough time to review the presentence report and talk with Mr. Quintana about it?
> Mr. Peregoy: I have, your Honor.
> The Court: Have you had the benefit of interpreter services as necessary?
> Mr. Peregoy: I have, your Honor.

[St. at p. 3].

However, at the evidentiary hearing, Mr. Peregoy testified that when he spoke with the Petitioner after sentencing, he did not use the interpreter, and readily admitted that he had other problems with communication. [Et at. 23-24. ]. "It's tough to talk to your client [in the holding area] because there is other inmates, there is noise, it's a confined area. It was difficult." Id. at 24. Thus, the language barrier as well as issues with noise and the presence of other individuals in the holding area, precluded Mr. Peregoy from consulting with Petitioner.

Because Mr. Peregoy had a "constitutionally-imposed duty" to consult with the Petitioner about an appeal, but failed to do so, the Court must determine whether the Petitioner was prejudiced by Mr. Peregoy's deficient performance.

The prejudice prong of the Strickland test requires the Petitioner to demonstrate that he was prejudiced by his counsel's deficient performance. Flores-Ortega, 528 U.S. at 481. Specifically, the Petitioner must show that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. Factors that are "highly relevant" and should be considered by the court in the prejudice analysis, include: (1) whether there were nonfrivolous grounds for appeal; or (2) whether the Petitioner expressed a

10

desire to appeal. Id. at 485-86. However, even though these factors should be taken into account, "the [Petitioner] is under no obligation to 'demonstrate that his hypothetical appeal might have had merit.'" United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007) (quoting Flores-Ortega, 528 U.S. at 486).

After reviewing the evidence in this case, the court finds that there were no "nonfrivolous" grounds for an appeal. During the evidentiary hearing, when questioned about the particular issue with his sentence that he wanted to appeal, the Petitioner testified that the Government was "accusing me of having had a pistol in my possession [at the time of the crime] and that is not true." [Evidentiary hearing transcript, p. 6]. However, the sentencing hearing transcript reveals that the Government abandoned the two-level gun enhancement, which the PSR recommended, because it believed it was not "readily provable," and requested that the Court strike it from the PSR. [Sentencing hearing transcript, p. 7]. In response, the Court removed the "gun enhancement" concluding "it's appropriate for me to take those two points off." Id. at 8. As a result, there was no gun enhancement which could have provided a nonfrivolous basis for an appeal.

In addition to the gun enhancement issue, the court also considered Mr. Peregoy's argument, at the end of the Petitioner's sentencing hearing, regarding a third point for acceptance of responsibility. [Sentencing hearing transcript, p. 34]. Mr. Peregoy objected to the probation officer's refusal to award the Petitioner a third point for acceptance. Id. The United States Sentencing Commission Commentary to Guideline 3E1.1 (Acceptance of Responsibility), Application Note 6, states that an additional one-level decrease for acceptance of responsibility under 3E1.1(b) may "only" be granted upon a formal motion by the government at sentencing." The government did not do so in this case.

11

Paragraph 6 of the Probation Officer's Response to the Petitioner's Objections to the denial of the third point for acceptance of responsibility provides a reason for the Government's failure to make the motion, "Quintana, at the time of his arrest, notified the government of his intent to go to trial...." which "resulted in the government preparing "extensively" for trial." Moreover, the probation officer also pointed out that:

> the court may wish to evaluate the appropriateness of an acceptance of responsibility decrease under 3E1.1(a) as Quintana is essentially denying the conduct which comprises his offense of conviction and relevant conduct for which he is accountable under 1B1.3.

[PSR at 3, para. 6]

Thus, the denial of a third point for acceptance of responsibility did not constitute a nonfrivolous basis for an appeal.

While the Petitioner raised other issues[9] and objections to the PSR, none of them would have provided a nonfrivolous basis for appeal. See e.g. [Sentencing hearing transcript at. 12-15, 18-19]

Finally, there is no indication in the record, nor has Petitioner proffered any argument that he would have wanted an appeal had he been consulted with. Furthermore, while Petitioner expressed an interest in an appeal, there is no indication in the record, nor has the Petitioner proffered any argument, that he would have appealed had Mr. Peregoy consulted with him. Since the Petitioner "cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel has not deprived him of anything, and he is not entitled to relief." Flores-Ortega, 528 U.S. at 484.

---

[9]Petitioner was indicted for conspiring "to distribute and to possess with the intent to distribute **more than 5 kilograms** of cocaine." At the Rule 11 hearing, Petitioner objected to the drug amount in the indictment. The discussion over the drug amount occupies 6 pages of the Rule 11 transcript. It resulted in the Government substituting a Criminal Information for the Indictment. The information, to which Petitioner pleaded guilty, charged him with "**5 kilograms or more**" of cocaine. (emphasis added).

In summary, it is the court's opinion that the Petitioner did not explicitly request that Mr. Peregoy file notice of an appeal. To the extent that the testimony of the Petitioner and Mr. Peregoy diverge regarding the request to appeal, and whether a conversation took place after the sentencing hearing, the court's credibility determination weighs in favor of Mr. Peregoy. In addition, it is also the court's opinion that Mr. Peregoy had a duty to consult with the Petitioner, because the Petitioner expressed an interest in an appeal at the sentencing hearing. However, even though Mr. Peregoy failed to fulfill this duty, after a rational and fair interpretation of the facts surrounding the Petitioner's guilty plea, and the lack of nonfrivolous grounds for appeal, the court concludes that there is insufficient evidence to support the Petitioner's claim. Accordingly, the court RECOMMENDS that the Petitioner's 28 U.S.C. § 2255 claim for ineffective assistance of counsel based on a failure to file an appeal be dismissed

**CONCLUSION**

For the reasons stated above, this court RECOMMENDS that the District Court reject the Petitioner's claim that he received ineffective assistance of counsel and dismiss his 28 U.S.C. § 2255 motion. The Clerk of Court shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected to proposed factual findings and legal conclusions accepted by the District Court.

This 18th day of July, 2008.

*[signature]*

13

_____
William A. Webb
U.S. Magistrate Judge